UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| | |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order DENYING Plaintiff's motion to remand

Before the Court is a motion to remand filed by Plaintiff/Cross-Defendant Jade Maxe Assad ("Plaintiff"). *See* Dkt. # 30 ("*Mot.*"). Defendant/Counterclaimant Steve Patrik Angello Josefsson and Defendants Size LLC and Rebels Productions LLC (together, "Defendants") oppose the motion, *see* Dkt. # 34 ("*Opp.*"), and Plaintiff replied, *see* Dkt. # 36 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **DENIES** Plaintiff's motion.

I. Background

The central issue on this motion is whether Plaintiff's claims relate to an arbitration agreement to which he and Defendant/Counterclaimant Angello were parties.

    A. Factual History

Plaintiff alleges that, in 2008, he and Angello formed a partnership to pursue various business ventures. *See Third Amended Complaint*, Dkt. # 5-18 ("*TAC*"), ¶ 18. Additionally, in 2012, Angello asked Plaintiff to work as an employee of Defendant Size LLC ("Size"); specifically, Plaintiff would seek out business deals for Size, and in return he would be given an interest in the company. *Id.* ¶ 23. Plaintiff and Angello also allegedly developed a creative agency, Defendant Rebels Products LLC ("Rebels"). *Id.* ¶ 20. The relationship between the parties did not last; Plaintiff claims that Angello began to exclude him from Size and Rebels, and that his employment was eventually terminated and wages and commissions to which he was entitled were withheld. *Id.* ¶¶ 26–30.

An important component of the business relationship between Plaintiff and Angello—Plaintiff's third amended complaint ("TAC") refers to it as "a very lucrative business deal for Size and Angello," *id.* ¶ 24—was a deal involving the SLS Hotel chain ("the SLS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

Deal"). "As a second feature to the SLS Deal," Plaintiff claims, "SLS agreed to purchase Kanon Organic Vodka, a brand partly owned by [Plaintiff] and Angello—[Plaintiff] and Angello as Partners owned 50% of the company; therefore, each owned 25% of the company. . . . This deal was very lucrative to the Partnership because it would generate sales to Kanon Organic Vodka . . ." *Id.* Defendants confirm the parties' involvement with Kanon Organic Vodka, explaining that Plaintiff and Angello, along with non-party Arash Pournouri, co-founded a company called Pagir Beverages AG ("Pagir"), which teamed with Kanon AB, a Swedish distillery, to manufacture and sell the spirit through a new company called Kanon Ventures AB. *See Declaration of Steve Patrik Angello Josefsson*, Dkt. # 34-1 ("*Angello Decl.*"), ¶ 2. On February 5, 2014, Pagir and Kanon AB entered into a Conditional Shareholders Contribution Agreement ("the Contribution Agreement"), under which Pagir would pay $2 million to Kanon Ventures AB unless the latter received financing of at least $10 million from one or more investors, and would also be liable for a $2 million penalty should it breach the agreement in some way. *Id.* ¶¶ 3–4, Ex. 1 ("*Contribution Agreement*"). The Contribution Agreement required that "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce." *Contribution Agreement* § 6(h).

Angello notes that "[t]he Contribution Agreement was ultimately terminated and neither Pagir nor Kanon Ventures AB realized any profits." *Angello Decl.* ¶ 5. Specifically, Kanon AB sent Pagir a letter in which it demanded that, because neither Pagir nor its guarantors paid the first contribution due under the Contribution Agreement, Plaintiff, Angello, and Pournouri were each jointly and severally liable to pay the $2 million penalty. *Id.* ¶ 6, Ex. 4. The letter further asserted,

> Unless payment is received, Kanon AB will initiate arbitrational proceedings at the Arbitration Institute of the Stockholm Chamber of Commerce against Pagir Beverages and the guarantors jointly and severally. . . . Please be advised that a judgment in arbitrational proceedings by the Arbitration Institute of the Stockholm Chamber of Commerce is enforceable worldwide according to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Arbitration Convention of 1958).

*Id.* Following dispatch of this letter, Pournouri settled with Kanon AB for $600,000. *Id.* ¶ 7. Kanon AB proceeded to institute arbitration proceedings against Angello pursuant to the terms of the Contribution Agreement. *Id.* ¶ 8. It is Angello's understanding that Plaintiff "was living in the United States during the pendency of Kanon AB's arbitration proceedings, and did not participate in the arbitration." *Id.* ¶ 9. Plaintiff claims that he was "never invited, included,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

joined or otherwise provided notice of said arbitration proceedings." *See Corrected Declaration of Jade Maxe Assad*, Dkt. # 35 ("*Assad Decl.*"), ¶ 5.[1]

      B.      <u>Procedural History</u>

On September 16, 2016, Plaintiff initiated this action in Los Angeles County Superior Court. *See Declaration of John Vafa*, Dkt. # 32 ("*Vafa Decl.*"), ¶ 5; *Complaint*, Dkt. # 1-2 ("*Compl.*"). The original complaint made only brief mention of Kanon and the parties' vodka venture. *Vafa Decl.* ¶ 5; *Compl.* ¶¶ 22, 24. Plaintiff subsequently filed a first amended complaint ("FAC") that included a defamation claim. *See* Dkt. # 1-7. Angello filed both a demurrer against the FAC and a special motion to strike the defamation claim pursuant to California's anti-SLAPP statute. *Vafa Decl.* ¶¶ 9–11. Following the issuance of a tentative ruling denying the anti-SLAPP motion, the parties stipulated to dismiss the defamation claim. *Id.* ¶ 11. Plaintiff then filed a second amended complaint ("SAC") on August 2, 2017. *Id.* ¶ 12; *see also* Dkt. # 4-4. It was shortly thereafter, in October 2017, that Plaintiff claims Angello first disclosed the Swedish arbitration proceedings. *Vafa Decl.* ¶ 17; *Assad Decl.* ¶ 5.

Plaintiff's TAC was filed on November 6, 2017. *Vafa Decl.* ¶ 16. Unlike the original complaint, the TAC references the Kanon venture on several occasions. *TAC* ¶¶ 24–26, 28, 32, 35–37, 74. In it, Plaintiff asserts the following causes of action:

    <u>First Cause of Action</u>: Breach of partnership agreement (against Angello). *Id.* ¶¶ 31–37.

    <u>Second Cause of Action</u>: Promissory fraud (against Angello and Rebels). *Id.* ¶¶ 38–55.

    <u>Third Cause of Action</u>: Promissory fraud (against Angello and Size). *Id.* ¶¶ 56–71.

---

[1] Angello attaches two copies of the eventual arbitration decision to his declaration—the first is the original decision in Swedish, *see Angello Decl.* ¶ 8, Ex. 5, while the second is an English translation of the decision, *see id.* ¶ 8, Ex. 6. Plaintiff objects to the admission of the English translation, noting that Defendants have "not offered any evidence of [the translator's] qualification or expertise regarding such language translation and does not state who did the translations." *See* Dkt. # 38, at 3. Indeed, no qualifications are provided, which runs afoul of the Federal Rules of Evidence. *See* Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation."); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Accordingly, the Court sustains Plaintiff's objection as to the introduction of the English translation, and so it will not be considered.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

Fourth Cause of Action: Breach of fiduciary duty (against Angello). *Id.* ¶¶ 72–77.

Fifth Cause of Action: Failure to pay wages in violation of California Labor Code §§ 200 et seq. (against Angello, Rebels, and Size). *Id.* ¶¶ 78–87.

Sixth Cause of Action: Breach of oral contract (against Angello and Size). *Id.* ¶¶ 88–92.

Seventh Cause of Action: Failure to reimburse expenses in violation of California Labor Code § 2802 (against Rebels). *Id.* ¶¶ 93–97.

Eighth Cause of Action: Violations of California Business & Professions Code § 17200 (against Rebels and Size). *Id.* ¶¶ 98–106.

Ninth Cause of Action: Quantum meruit (against all Defendants). *Id.* ¶¶ 107–09.

Tenth Cause of Action: Declaratory relief (against all Defendants). *Id.* ¶¶ 110–12.

Eleventh Cause of Action: Fraudulent conveyance (against Angello). *Id.* ¶¶ 113–20.

In December 2017, Angello filed both his answer to the TAC and a cross-complaint. *See Answer*, Dkt. # 6-6 ("*Ans.*"); *Cross-Complaint*, Dkt. # 6-7 ("*Cross-Compl.*"). In March 2018, shortly before the state court's April 16, 2018 trial date, Angello initiated a new arbitration action against Plaintiff relating to the Contribution Agreement. *See Declaration of Jerker Edström*, Dkt. # 34-3 ("*Edström Decl.*"), ¶¶ 2–3. Since that time, the parties have engaged in the arbitration process in Sweden, and await the appointment of arbitrators to decide the matter. *Id.* ¶¶ 4–7. Additionally, on March 27, 2018, Defendants removed the action to this Court. *See Declaration of Alex M. Weingarten*, Dkt. # 33-5 ("*Weingarten Decl.*"), ¶ 15; *Notice of Removal*, Dkt. # 1 ("*NOR*"). Defendants asserted in their notice of removal that the Court retains subject matter jurisdiction over the case pursuant to 9 U.S.C. § 203, "because this dispute arises out of an arbitration agreement or award covered by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958" ("the Convention"). *NOR* ¶¶ 8–16.

Plaintiff now moves to remand the action to state court, arguing that the statute cited by Defendants as the basis for removal is not applicable here, either because Defendants waived their right to arbitration or because the case is not related to the Contribution Agreement and its accompanying arbitration provision. *See generally Mot.*

II. Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). A case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). Courts strictly construe the removal statute against removal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034; *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

III. <u>Discussion</u>

"An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. Defendants in such proceedings "may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." *Id.* § 205. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Accordingly, there is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions," which is "reinforced by the emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011) ("Although we generally construe removal statutes strictly, the plain language of § 205 provides federal courts with remarkably broad removal authority.") (citation omitted).

Plaintiff does not dispute that arbitration proceedings undertaken pursuant to the Contribution Agreement fall under the Convention, and indeed, the Contribution Agreement satisfies the four requirements 9 U.S.C. § 202: the agreement is in writing, it provides for arbitration in the territory of a signatory of the Convention, it arises out of a commercial relationship, and a party to the agreement is not an American citizen. *See Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009). Instead, Plaintiff suggests that removal under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

§ 205 is improper for three reasons: because his claims in this action do not "relate to" the arbitration provision, *see Opp.* 17:3–21:13, because Defendants waived their right to arbitrate under the Convention, *see id.* 7:6–12:22, and because Defendants waived their right to removal, *see id.* 12:23–17:2. Each of these arguments will be considered in turn.

    A.    <u>Whether the Action Relates to the Arbitration Agreement</u>

Removal under § 205 is permissible "[w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205 (emphasis added). The Ninth Circuit has held that "whenever an arbitration agreement falling under the Convention could *conceivably affect* the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Infuturia Glob.*, 631 F.3d at 1138 (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)) (emphasis in original). "The phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes." *Infuturia Glob.*, 631 F.3d at 1138. Moreover, "the statute invites removal of cases whose relation to an agreement or award under the Convention is based on an affirmative defense by expressly abrogating the 'well-pleaded complaint' rule." *Id.*; *see also* 9 U.S.C. § 205 ("[T]he ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.").

Here, Plaintiff argues that

> [t]he arbitration clause contained in [the Contribution Agreement] only subjects to arbitration disputes relating to the Contribution Agreement. The Contribution Agreement does not govern disputes relating to the broader partnership between Plaintiff and Angello. It in no way requires the parties to submit partnership disputes to arbitration. The determination on the ultimate issue of whether Angello wrongly excluded Plaintiff from Rebels or whether Angello wrongly terminated Plaintiff's employment with Size is not affected by the outcome of a dispute relating to any issue subject to arbitration.

*Mot.* 18:6–15 (citations omitted). The Court disagrees with this assessment. However small an aspect of the Plaintiff/Angello relationship the Kanon venture might have been, given that it is only occasionally mentioned in Plaintiff's TAC, it is nonetheless a component of the present dispute. Plaintiff alleges that he had in interest in "Kanon Organic Vodka," *TAC* ¶ 28, and in his first cause of action for breach of partnership agreement against Angello, suggests that the latter "refus[ed] to compensate [Plaintiff] for his services to, and equity and ownership interest in, Size, the Rebels companies, *Kanon*, and all of the Partnership businesses." *Id.* ¶ 36 (emphasis added); *see also id.* ¶ 37 ("As a proximate result of Angello's conduct, Assad has sustained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

general and consequential damages, including but not limited to loss of income and revenue, profits, interest earned on those monies, and ownership interest of the value of the Partnership based on the profits and revenues of all businesses that are a part of the Partnership structure, including but not limited to . . . Kanon . . ."). It is not true, as Plaintiff asserts, that "[t]o the extent Kanon is mentioned, it is only incidental and among a broader reference to the extent of the partnership between Plaintiff and Angello." *Mot.* 19:18–20. Instead, whatever profits the Kanon venture realized, and whatever compensation Plaintiff is owed as a result of his services to it, form a basis, however minor, for Plaintiff's claims and recovery. It is therefore conceivable that arbitration pursuant to the Contribution Agreement could affect the outcome of Plaintiff's action.

Furthermore, in their answer to Plaintiff's TAC, Defendants raise an offset and/or setoff defense, suggesting that Plaintiff's claims "are barred, in whole or in part, because any recovery [Plaintiff] may be entitled to with respect to each of its causes of action set forth in the TAC is subject to an offset, in whole or in part, by any money or other relief that [Plaintiff] owes to Defendants through [Angello's] Cross-Complaint." *Ans.* ¶ 13. The cross-claims referenced as part of this affirmative defense are based in part on money Plaintiff allegedly owes Angello relating to the Kanon venture. *See Cross-Compl.* ¶¶ 34–35. Because § 205 "invites removal of cases whose relation to an agreement or award under the Convention is based on an affirmative defense," *Infuturia Glob.*, 631 F.3d at 1138, these cross-claims provide further connection between the arbitration provision of the Contribution Agreement and Plaintiff's action.

In short, based on Plaintiff's invocation of the Kanon venture as a potential ground for liability and recovery in his TAC, as well as Defendants' affirmative defense, the Court concludes that the subject matter of this action relates to the Contribution Agreement for purposes of § 205.

      B.    <u>Whether Defendants Waived Their Right to Arbitrate</u>

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). However, "waiver of the right to arbitration is disfavored," and "any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008) ("[A]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements."); *Underwriters Reinsurance Co. v. Ace Am. Ins. Co.*, No. CV0208177CASJTLX, 2003 WL 24011931, at *5 n.5 (C.D. Cal. Feb. 10, 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) ("The policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

favoring arbitration applies 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'").

The Ninth Circuit has articulated the factors a court should consider when determining whether arbitration has been waived:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox*, 533 F.3d at 1124 (quoting *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)). Of these factors, "[u]nder both federal and state law, whether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations." *Hong v. CJ CGV Am. Holdings, Inc.*, 222 Cal. App. 4th 240, 249 (2013); *see also Saint Agnes Med. Ctr.*, 31 Cal. 4th at 1203–04 ("Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. . . . Prejudice typically is found only where the petitioning party's conduct has substantially undermined th[e] important public policy [of favoring arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration."). "[W]aiver generally does not occur where the arbitrable issues have not been litigated to judgment," *Saint Agnes Med. Ctr.*, 31 Cal. 4th at 1201, and "[w]here the Ninth Circuit has found prejudice following significant and expensive litigation, it has focused on other harms arising from arbitration after lengthy litigation, such as duplication of litigation on the merits." *Aguilera v. Prospect Mortg., LLC*, No. CV 2:13-05070 DMG (CWx), 2013 WL 4779179, at *6 (C.D. Cal. Sept. 5, 2013).

Plaintiff points to a number of undisputed facts that suggest waiver, or at least implicate the first five factors articulated above. As Plaintiff notes, Defendants had at least constructive (if not actual) knowledge of the right to compel arbitration as preserved in the Contribution Agreement since it was signed in February 2014. *See Contribution Agreement* at 6; *Hoffman Constr. Co. of Or. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("[I]t cannot be said that [defendant] lacked knowledge of the right to compel arbitration. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

contract itself called for arbitration of disputes . . ."). Certainly, Defendants were aware of the right to arbitrate by December 2016, when Angello participated in the first Swedish arbitration. *See Angello Decl.* ¶ 8. At that time, Defendants did not notify Plaintiff of nor invite him to participate in the arbitration. *See Vafa Decl.* ¶ 17; *Assad Decl.* ¶ 5. Instead, Plaintiff observes, "Angello continued to litigate the matter in state court for over a year." *Mot.* 8:19–20. Defendants neglected to mention the right to arbitrate, did not seek a stay, filed a counter-complaint, and availed themselves of the judicial process, including engaging in various discovery matters. *See Mot.* 5:1–6:7; *Opp.* 7:24–8:25.

      However, despite Plaintiff's effective characterization of these events, the Court ultimately agrees with Defendants that the facts do not support an inference of waiver. As mentioned, the key inquiry is whether Plaintiff was prejudiced by Defendants' actions. Defendants note that "[n]one of [Plaintiff's] arguments have been addressed on their merits," and that "[m]ost of the litigation activity prior to removal related to Defendants challenging defects in [Plaintiff's] various iterations of the Complaint in an attempt to have the matter dismissed entirely on the papers." *Opp.* 18:13–18; *see also Weingarten Decl.* ¶¶ 2–7. The TAC—now the operative pleading in this case—was filed in November 2017, and Angello's substantive response was not filed until December 2017. Inconvenient as the timing of removal may be, Defendants provide a reasonable explanation for it: "[B]ecause [Plaintiff's] claims were not set until recently, and due to ongoing settlement negotiations, Angello did not institute arbitration until March 2018—after no settlement resolution was reached and given the April 16, 2018 state court trial date." *Opp.* 18:25–28. It might be tempting to characterize the delay, as Plaintiff does, as an attempt "[t]o allow Defendants a 'second bite of the apple.'" *Mot.* 11:18–19; *see also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992) ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."). However, courts have declined to find waiver in analogous cases where arbitration was not sought immediately, even after years of delay. *See, e.g., Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074–75 (9th Cir. 2013) (declining to find waiver where plaintiff's claims were not "deci[ded] on the merits" even after "years of litigation prior to the motion to compel"); *Fisher*, 791 F.2d at 694 (declining to find waiver where the "right to compel arbitration [was asserted] more than three years after the action was filed"); *Aguilera*, 2013 WL 4779179, at *1–2, 6 (citing *Biernacki v. Serv. Corp. Int'l*, 533 F. App'x 741, 742–43 (9th Cir. 2013)) (granting motion to compel arbitration after three years of litigation and noting that in a "recent unpublished decision, with facts somewhat similar to those in this case, the Ninth Circuit found no prejudice where the parties had litigated class certification for three years but had not litigated the merits of the case").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

As for Defendants' use of the discovery process, and the expenses Plaintiff incurred as a result, Defendants compellingly note that "Angello's discovery requests were served jointly with Rebels's and Size's requests, and few relate to Kanon." *Opp.* 19:7–9; *see also Weingarten Decl.* ¶¶ 9–10. Rebels and Size are *not* parties to the Contribution Agreement and its accompanying arbitration provision, and courts have declined to find prejudice where, as here, discovery could still be used to litigate non-arbitrable claims. *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (finding no waiver where defendant "only moved the battle from one venue to another" and discovery produced "sunk costs" that could be used for non-arbitrable claims); *Fisher*, 791 F.2d at 697 ("The record does not support the Fishers' contention that they have been prejudiced by the extensive discovery undertaken by the parties in this case. The Fishers' claim under section 12(2) of the Securities Act of 1933 is nonarbitrable and will remain in federal court. Any discovery conducted in relation to this claim will be available for the trial of the section 12(2) claim. The fact that the Fishers also engaged in discovery concerning the nonarbitrable claims does not constitute sufficient prejudice to establish waiver.") (citation omitted).

In short, considering all of the factors, and mindful of the presumption that waiver of the right to arbitration is disfavored, the Court concludes that Defendants did not waive that right here. Certainly, Defendants acted inconsistently with the right, litigating in state court for years without seeking a stay. However, there is no indication that Plaintiff was prejudiced by these actions. The dispute was not adjudicated on the merits, and so neither removal nor arbitration would result in duplicative proceedings. And as for the discovery expenses incurred by Plaintiff—which is a major focus of his argument in favor of prejudice, *see Reply* 2:18–4:18—these expenses are not wasted given that Plaintiff's claims against Rebels and Size are not subject to arbitration. Plaintiff's frustration is understandable, but the facts here do not support a finding of waiver.

C. <u>Whether Defendants Waived Their Right to Removal</u>

Plaintiff also argues that Defendants have waived their right to remove the case. *See Mot.* 12:23–17:2.

It is true, as Plaintiff notes, that "a defendant 'may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.'" *Acosta v. Direct Merchs. Bank*, 207 F. Supp. 2d 1129, 1131–32 (S.D. Cal. 2002) (quoting *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994)). However, the Court agrees with Defendants that the standard waiver analysis is inapposite here, given that removal under § 205 is distinct from traditional removal under 28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

U.S.C. § 1446 in terms of timing and analysis. Courts have held that "[w]hen removal is based on the Convention . . . there is a strong preference for a federal forum," though "a party can waive its right of removal by agreeing to a contractual clause that gives a clear and unequivocal waiver of that right." *Paradigm Sols. Grp., Inc. v. Shanghai Precision Tech. Corp.*, No. 15-CV-539 JLS (JLB), 2015 WL 3466017, at *2 (S.D. Cal. June 1, 2015); *see also Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 443 (5th Cir. 2009) (quoting *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)) (noting that in "cases addressing waiver of removal rights under the Convention," the "clear-and-unequivocal standard" is that "[f]or a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right"); *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158 (3d Cir. 2000) ("[T]here can be no waiver of a right to remove under the Convention Act in the absence of clear and unambiguous language requiring such a waiver."). "There are three ways in which a party may clearly and unequivocally waive its removal rights: '[1] by explicitly stating that it is doing so, [2] by allowing the other party the right to choose venue, or [3] by establishing an exclusive venue within the contract.'" *Ensco Int'l*, 579 F.3d at 443–44 (quoting *New Orleans*, 376 F.3d at 504).

Here, there is no indication of any language in the Contribution Agreement that clearly and unequivocally indicates waiver of Defendants' removal rights. Therefore, despite Defendants' extensive engagement with this matter in state court, including Angello's filing of a cross-complaint, under the differing standard applied to removal cases under § 205, waiver did not occur.

D.      Whether the Court Should Sever Plaintiff's Claims

Because "[f]ederal courts are courts of limited jurisdiction," *Gunn*, 568 U.S. at 256, the Federal Rules require that, when an action is removed to federal court, "the district court shall sever from the action all claims" that are "not within the original or supplemental jurisdiction of the district court" and "remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c). Plaintiff requests that the Court sever and remand any claims that are not subject to the arbitration agreement, on the grounds that the Court lacks jurisdiction over them and should decline to exercise supplemental jurisdiction. *See Mot.* 21:14–25:15.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (requiring that "[t]he state and federal claims [] derive from a common nucleus of operative fact"). If "a plaintiff's claims are such that he would ordinarily be expected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Gibbs*, 383 U.S. at 725; *see also Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

In Plaintiff's TAC, the Kanon venture is explicitly mentioned only as to his first cause of action for breach of partnership agreement, *see TAC* ¶¶ 31–37, and fourth cause of action for breach of fiduciary duty, *see id.* ¶¶ 72–77, both of which are asserted against Angello and *not* Rebels or Size. The other nine causes of action concern Plaintiff's work at and termination from Rebels and Size, which he argues "do[es] not share a common nucleus of operative facts with the February 2014 Contribution Agreement. The facts making up these separate claims took place at different times, on different continents, and involve different entities, documents and witnesses." *Mot.* 23:3–7. Accordingly, Plaintiff urges the Court to "decline to exercise supplemental jurisdiction over the claims wholly unrelated and unaffected by the Contribution Agreement." *Id.* 23:9–11.

However, although "Kanon" is mentioned only in Plaintiff's first and fourth causes of action, the Court disagrees with his conclusion that the venture is unrelated to the other nine claims. As Defendants correctly note, the partnership between Plaintiff and Angello "to seek out lucrative business ventures," a relationship of which the SLS Deal and Kanon were a major part, is a foundation of the TAC. *TAC* ¶¶ 18, 24. In addition to Plaintiff's first and fourth causes of action, his second claim for promissory fraud, ninth claim for quantum meruit, and tenth claim for declaratory relief also implicate the Plaintiff/Angello partnership and the interests it produced. *See id.* ¶ 39 ("Angello . . . promised Plaintiff that if Plaintiff performed the duties under the terms of their Partnership agreement, Plaintiff would own an equity interest in every business venture they entered into as a part of the Partnership."); *id.* ¶ 108 ("Plaintiff has provided services, labor, expertise, and material [for] Angello . . ."); *id.* ¶ 111 ("An actual controversy exists between the parties hereto relating to the rights, duties, and liabilities specifically as to Plaintiff's rights and ownership in Size, Rebels and *related entities* . . .") (emphasis added). Because the Kanon venture is at least in part a basis for these additional causes of action, the Court agrees with Defendants that they share a common nucleus of fact.

Furthermore, Defendants note that the other causes of action implicate Plaintiff's employment with Size. *See id.* ¶ 23. The SLS Deal, of which the Kanon venture was a part, is a major component of this relationship. *See id.* ¶ 24 ("In the fall of 2014, [Plaintiff] was able to secure a very lucrative business deal for Size and Angello with the SLS Hotel chain ('SLS Deal'). The SLS Deal was to pay Angello through Size approximately $13,600,000 USD."). Plaintiff's third cause of action for promissory fraud, fifth cause of action for failure to pay wages, sixth cause of action for breach of oral contract, and eighth cause of action for unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2470 PSG (JPRx) | Date | June 19, 2018 |
|---|---|---|---|
| Title | Jade Maxe Assad v. Steve Patrik Angello Josefsson et al. | | |

competition all concern, at least in part, the SLS Deal and Plaintiff's employment with Size. *See id.* ¶ 57 ("Angello . . . promised Plaintiff that if Plaintiff worked for Size LLC and its counterpart Size businesses in other countries, that he would be given an ownership interest in Size LLC, separate from any compensation he may be paid for his work."); *id.* ¶ 83 ("As an employee of Size, LLC, Plaintiff qualified for and earned a bonus of approximately $1.360 million USD or at least ten percent (10%) of the entire gross value of the SLS Deal for Size and its top client Angello which Plaintiff is informed and believes was $13,600,000 USD, for successfully procuring, negotiating and closing the SLS deal. Size LLC has failed to pay Plaintiff his bonus compensation."); *id.* ¶ 89 ("Prior to Plaintiff beginning to work on the SLS deal, Angello, individually and on behalf of Size LLC, offered and agreed to pay Plaintiff 10% of the gross value of the SLS deal that he was able to put together . . ."); *id.* ¶ 101 ("Through the conduct alleged herein Size LLC and Rebels, and each of them, have acted contrary to California law."). Again, each of these claims share, at least in part, a factual basis stemming from the Kanon venture, which is subject to the arbitration provision of the Contribution Agreement.

Because all of these additional causes of actions share a common nucleus of fact with the claims over which this Court retains jurisdiction under § 203, the Court concludes that the exercise of supplemental jurisdiction over them is appropriate. Although Plaintiff urges the Court to decline supplemental jurisdiction, *see Mot.* 23:14–24:21, none of the factors listed under 28 U.S.C. § 1367(c) is applicable here. Therefore, the Court retains jurisdiction over the action as a whole and will not sever and remand any individual causes of action.[2]

IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED.**

---

[2] The Court also notes that, given the factual overlap among the various causes of action, "[i]f this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources." *Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011). This also militates against severing and remanding any claims.